aShawn A. McMillan (SBN: 208529)
THE LAW OFFICE OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, CA 92122
Phone: (858) 646-0069
Fax: (858) 746-5283
Email: attyshawn@netscape.net

Samuel H. Park (SBN: 261136)
LAW OFFICE OF SAMUEL H. PARK, APC
374d Bergin Drive
Monterey, CA 93940
Phone: (831) 529-5955
Email: sam@sampark.lawyer

Attorneys for Plaintiffs,
Lloyd Thomas Bernhard, II and Stephanie Celeste Tejada-Otero

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD THOMAS BERNHARD, II, et al., | Case No. 2:21-cv-00172-TLN-DB |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SONIA PIVA'S MOTION TO STRIKE** |
| v. | |
| COUNTY OF SAN JOAQUIN, et al., | |
| Defendants. | Date:        6/15/2023<br>Time:        2:00 p.m.<br>Courtroom:   2<br>Judge:       Hon. Troy L. Nunley |

1

**<u>TABLE OF CONTENTS</u>**

2

I. INTRODUCTION ......................................................................................... 1

3

II. STATEMENT OF FACTS ......................................................................... 1

4

III. LAW .......................................................................................................... 6

5

IV. ARGUMENT ............................................................................................ 7

6

7

A. Plaintiffs' Right to Familial Association Was Violated When Defendants Failed to Give Notice Prior to Subjecting Plaintiffs' Children to Medical Examinations ......................................................................................... 7

8

9

   1. Defendant Piva Violated Plaintiffs' Rights by Failing to Give Notice of The Medical Examination on March 21, 2019 .......................................... 9

10

   2. Defendant Piva Violated Plaintiffs' Rights by Failing to Give Notice of The Medical Examination on April 14, 2019 ........................................... 9

11

12

B. Plaintiffs' Right to Familial Association In Being With Their Children While They Are Receiving Medical Attention Was Violated ................... 10

13

14

C. Neither Welfare & Institutions Code § 324.5(a) nor Health & Safety Code § 1530.6(a)(3) Dispense of Plaintiffs' Right to Notice and Be Present at Medical Examinations ........................................................................... 11

15

D. Defendant Piva's Motion Does Not Meet the Criteria for Striking Allegations Under Rule 12(f) .................................................................... 15

16

17

V. CONCLUSION .......................................................................................... 16

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Benavidez v. Cty. Of San Diego*, 993 F.3d 1134, 1150 (9th Cir. 2021) ............... 10

*Doe v. Lebbos*, 348 F.3d 820 (2003), ................................................................ 12

*Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).......................................... 7

*Felder v. Casey*, 487 U.S. 131, 138 (1988) ..................................................... 1, 11

*Greene v. Camreta*, 2006 U.S. Dist. LEXIS 16764, *12 and 19-20 (D. Or. 2006)................................................................................................................. 13

*Greene v. Camreta*, 588 F.3d 1011, 1027 (9th Cir. 2009) ........................ 8, 10, 13

*Greene v. Camreta*, 661 F.3d 1201, 1201 (9th Cir. 2011) ................................... 10

*Mann v. Cnty. Of San Diego*, 147 F. Supp. 3d 1066 (S.D. Cal. 2015)............... 13

*Mann v. Cty. Of San Diego*, 907 F.3d 1154 (9th Cir. 2018)........................ 1, 8, 14

*Martinez v. Califor*nia, 444 U.S. 277, 284 (1980).......................................... 1, 11

*N.L. v. Children's Hosp. L.A.*, 2016 U.S. Dist. Lexis 196827, at *7-11 (C.D. Cal. Mar. 25, 2016) ......................................................................................... 13

*N.L. v. Childrens Hosp. L.A.*, 711 F. App'x 433, 433 (9th Cir. 2018) ................ 14

*N.L. v. Childrens Hosp. L.A.*, No. CV 15-07200-AB (FFMx), 2016 U.S. Dist. LEXIS 197697, at *7 (C.D. Cal. June 22, 2016) ............................................ 14

*Reynolds v. County of San Diego*, 224 F. Supp.3d 1034 (S.D. Cal. 2016) ......... 13

*Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) ................ 7

*Swartwood v. County of San Diego*, 84 F. Supp. 3d 1093 (S.D. Cal. 2014) 12, 13, 14

*Tenenbaum v. Williams,* 907 F. Supp. 606 (E.D.N.Y. 1995) .............................. 12

*van Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 911 F.2d 863, 867 (2d Cir. 1990)................................................................................................................. 7

*Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999)................... passim

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). 7, 15, 16

**Federal Rules**

Fed. R. Civ. P. 12(f) ........................................................................... 6, 15

Rule 12(b)(6) ............................................................................................. 7

Rule 56 ...................................................................................................... 7

**State Statues**

Cal. Health & Safety Code § 1530.6(a)(3),(c) ...................................... 15

Cal. Penal Code § 11165.7 ....................................................................... 8

California Health & Safety Code § 1530.6(a)(3), ........................... 11, 14

California Welfare & Institutions Code § 324.5(a) ................... 11, 12, 14

Or. Rev. Stat. § 419B.337 ....................................................................... 13

**State Rules**

Or. Admin. R. 413 015 0720(4) .............................................................. 13

MEMORANDUM OF POINTS AND AUTHORITIES

1

# I. <u>INTRODUCTION</u>

2    Defendant, Sonia Piva's motion to strike paragraphs from Plaintiff's

3    complaint should be denied, as these allegations are material and pertinent to

4    Plaintiffs' claims that Defendant Piva repeatedly violated Plaintiffs' Fourteenth

5    Amendment right to familial association by, (1) depriving Plaintiffs of notice

6    and an opportunity to consent to investigatory medical examination of their

7    children and (2) depriving Plaintiffs of the opportunity to be with their children

8    during such examinations. The allegations are also material and pertinent to

9    Plaintiffs' claim that the County of San Joaquin's deficient policies, practices,

10    and customs were the moving force behind the repeated deprivation of

11    Plaintiffs' substantial rights.

12    In bringing her motion, Defendant Piva ignores a body of clearly

13    established law, spanning from *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126

14    (9th Cir. 1999) through *Mann v. Cty. Of San Diego*, 907 F.3d 1154 (9th Cir.

15    2018), elucidating the rights that are sought to be vindicated. Piva erroneously

16    relies on state statutes as a basis for immunizing her knowing and wrongful

17    conduct, when no reasonable construction of such statutes permits the

18    circumvention of Plaintiffs' constitutionally guaranteed rights to notice and an

19    opportunity to be present during medical examinations. Moreover, to the extent

20    that any such construction is even possible, they are preempted by federal law.

21    See *Martinez v. Califor*nia, 444 U.S. 277, 284 (1980); *Felder v. Casey*, 487

22    U.S. 131, 138 (1988).

23    For the following reasons, Plaintiffs, Lloyd Bernhard, II ("Lloyd"), and

24    Stephanie Tejada-Otero ("Stephanie") respectfully request the Court to deny

25    Defendant Piva's motion to strike.

26    # II. <u>STATEMENT OF FACTS</u>

27    This lawsuit arises from the repeated and intentional failure of County of

28    San Joaquin ("County") social workers to provide Plaintiffs with notice of their

children's medical examinations and the opportunity to be with their children during such examinations. This repeated conduct not only ran afoul of Plaintiffs' right to familial association, it directly violated the juvenile court's repeated orders that Plaintiffs be provided notice of medical appointments and be allowed to attend the visits.

At the time of the events alleged, Plaintiffs were the parents of two small children, At.B and Al.B. Together, they formed a loving family unit. SAC ¶ 13.

On December 16, 2018, At.B was found outside of the home, although the front door of the home had a childproof cover. SAC ¶ 14. A disgruntled neighbor, who had a history of making frivolous calls to law enforcement, allegedly entered the home, accompanied by a stranger. SAC ¶ 15. They claimed that At.B was in the street and was nearly run over. The neighbor called the police. SAC ¶ 16.

Officers from the Tracy Police Department arrived and spoke with Stephanie. SAC ¶ 17. They briefly looked inside the home, which appeared tidy and safe, and saw At.B. *Id.* They left minutes later without issuing any citations or making any arrests. *Id.*

More than ten days after receiving a report, County employee Adrenna Torrence began her investigation, which was now late and out of compliance. SAC ¶ 20. She met with Stephanie but was unable to schedule a follow up visit to see the children. SAC ¶ 21. Torrence sought an order from the Juvenile Court, authorizing entry into Plaintiffs' home to assess the health and safety of the children. SAC ¶ 22. The court issued a defective warrant, so Torrence filed what is known as a "Non-Detained Petition," which was set for hearing on January 16, 2019. *Id.*

Plaintiffs were not given notice of the January 16, 2019 hearing and did not attend. SAC ¶¶23-24. At the hearing, the juvenile court ordered that the children be detained from Plaintiffs and placed in the care of County HSA,

pending a further hearing set for January 30, 2019. *Id.* The court ordered HSA to provide notice to Plaintiffs. *Id.*

On January 29, 2019, Defendants, Sonia Piva and Leslie Billings, seized At.B and Al.B and took the children to Mary Graham Children's Shelter. SAC ¶ 25. There, as a matter of routine, both children were subjected to invasive bodily examinations without parental consent or judicial authorization. *Id.* At the time of the examinations, there were no exigent circumstances because neither child had suffered or was in immediate danger of suffering severe bodily injury within the time it would have taken to obtain a warrant. *Id.*

Piva and Billings authorized and carried out said bodily examinations pursuant to the established policies, customs, and practices of County HSA of conducting such investigatory bodily examinations of detained children outside of the presence of their parents and without their parents' consent or an authorizing court order. SAC ¶¶26-27. Plaintiffs allege that these types of unwarranted forensic examinations were conducted indiscriminately on all children taken into County custody, including when there were no exigent circumstances, parental consent, or authorizing court order. *Id.*

Piva and Billings then agreed that both children should be transported to San Joaquin General Hospital for a further forensic medical examination to screen for potential physical abuse. SAC ¶¶ 28-29. This also was carried out without notice to Plaintiffs, parental consent, or authorizing court order. SAC ¶¶30-33. Again, no exigent circumstances existed at the time Piva and Billings caused each of the children to undergo a second investigatory examination. SAC ¶ 34.

Thereafter, HSA employees continued to deprive Plaintiffs of the ability to attend their children's medical visits by failing to inform Plaintiffs of appointments, authorizing "emergency" medical appointments by foster caretakers when no true emergency existed, and administering vaccines

1   without parental knowledge or consent or court order. SAC ¶ 35. Such conduct
2   conformed with the County's policy, custom, or widespread practice of
3   excluding parents from medical visits of their children and of forcibly
4   vaccinating all children placed in its care. SAC ¶¶36-37.

5          After placing both children in foster care, on February 4, 2019, Billings
6   instructed the foster care provider to set medical and dental appointments for
7   the children. SAC ¶ 38. Plaintiffs allege that the medical and dental
8   appointments went forward without any notice to Plaintiffs, without Plaintiffs'
9   consent, and without any opportunity for Plaintiffs to attend. *Id.*

10         On February 20, 2019, one of the foster care providers made a report that
11  the children were the possible victims of sexual abuse and physical abuse. SAC
12  ¶ 39. The matter was assigned a 10-day referral.

13         Following a visit between Plaintiffs and their children, another social
14  worker, Aisha Thompkins, met with the foster care provider, separately,
15  outside of the presence of Plaintiffs, and conducted a bodily search of each of
16  the children. SAC ¶¶ 40-41. The foster care provider informed Thompkins that
17  he canceled a medical appointment for the children because Plaintiffs wanted
18  to be present at the appointment. SAC ¶ 42.

19         On February 26, 2019, the parties convened for a hearing in juvenile
20  court, specially set by HSA. HSA, through counsel, requested that Lloyd be
21  excluded from medical visits. SAC ¶ 43. The request was denied. *Id.*

22         On March 6, 2019, Plaintiffs had a supervised visit, where Lloyd noticed
23  that At.B had bruises on the side of her face and blood coming out of her ear.
24  SAC ¶44. Plaintiffs requested that the child receive medical attention. Billings
25  appeared the minimize the injuries, but separately instructed the foster
26  caretaker to prepare an incident report. SAC ¶¶45-46.

27         On or about March 21, 2019, Plaintiffs learned that HSA changed the
28  foster care placement of the children without advance notice to Plaintiffs. SAC

- 4 -

¶ 47. The new caretaker took At.B. to urgent care to address various "sores" and "boils" all over her body. SAC ¶ 48. Neither Piva nor Billings notified Plaintiffs in advance of the visit, even though the child did not require emergency care. SAC ¶ 48.

After learning of the unscheduled doctor's visit, Plaintiffs complained to Piva about the rapidly declining health of the children and the lack of any notice regarding the medical appointments. SAC ¶ 49. They demanded that Piva provide the children's next dates for doctor appointments. *Id.*

On April 3, 2019, Plaintiffs raised the issue concerning the failure to notify Plaintiffs of medical appointments and consequent exclusion from the visits. SAC ¶ 50. The Juvenile Court expressly ordered that both parents are authorized to be present at medical appointments and that HSA was to notify them of all appointments. *Id.*

Angered by Plaintiffs complaint to the Court, Defendants, Piva and Billing, retaliated against Plaintiffs by canceling Plaintiffs visits with their children on April 10, 2019. SAC ¶ 51. Billings claimed that At.B had a fever and was vomiting, but that a doctor said no medical care was necessary. Plaintiffs emailed Billings, requesting updates and advance notice of any medical appointments for At.B. *Id.*

On April 14, 2019, in direct contravention of the juvenile court's orders, the foster caretaker took At.B. to a doctor's appointment. SAC ¶ 53. Nobody gave Plaintiffs advance notice of the visit. *Id.* Billings informed Plaintiffs, after the fact, two days later. *Id.* Billings then covered up her wrongdoing by not logging the April 16, 2019 emails that she sent and received in the statewide CWS/CMS system. SAC ¶ 55.

Plaintiffs demanded, in writing, that Billings state where At.B had been seen but were ignored. SAC ¶ 56.

1     Plaintiffs further allege that Defendants administered various vaccines to

2 the children without notice, without Plaintiffs' consent, and without a court

3 order authorizing such medical treatments and procedures. SAC ¶¶ 58-60.

4 Plaintiffs learned, after the fact, that the children were forcibly vaccinated on

5 February 7, 2020, April 18, 2020, and January 5, 2021, all without any notice

6 or the opportunity for Plaintiffs to console their children during these

7 potentially traumatic events. *Id.*

8     In her Motion to Strike, Defendant Piva, requests the Court to strike two

9 of the medical examinations that took place without notice to Plaintifs,

10 mentioned in Paragraphs 48 and 53 of the Second Amended Complaint and

11 copied below:

12         48. On or before March 21, 2019, the new caretaker
13     took At.B to urgent care. Plaintiffs are informed and
       believe that At.B received antiobiotics to address
14     various "sores" or "boils" all over her body. Yet,
       neither Billings, Piva, nor the new caretaker informed
15     Plaintiffs that At.B needed medical treatment – or had
       received it. The child was simply whisked off to urgent
16     care, without notice to Plaintiffs, without their consent
       or presence, and without a court order. Nothing about
17     the child's condition required emergency care, such
       that Plaintiffs needed to be excluded from the doctor
18     visit.

19         53. Yet, on Billings' and Piva's instruction, on April
       14, 2019, the foster caretaker took At.B to a doctor on
20     a non-emergency basis without any notification to
       Plaintiffs in direct contravention of the Court's order.
21     Consequently, Plaintiffs did not have the opportunity
       to attend the visit, directly observe At.B's condition,
22     and consult with At.B's doctor. Billings informed
       Plaintiffs of the visit after the fact, two days later, on
23     April 16, 2019.

24                        **III. <u>LAW</u>**

25     Rule 12(f) authorizes only the striking of "an insufficient defense or any

26 redundant, immaterial, impertinent, or scandalous matter" from a pleading.

27 Fed. R. Civ. P. 12(f).

28

1  A Rule 12(f) motion is limited in scope and should not be used "as a

2  means to dismiss some or all of a pleading," i.e. in place of a Rule 12(b)(6)

3  motion or a Rule 56 motion. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d

4  970, 974 (9th Cir. 2010). The motion is rightly viewed with disfavor, as "an

5  extreme measure," and is rarely granted. See *Stanbury Law Firm, P.A. v. IRS*,

6  221 F.3d 1059, 1063 (8th Cir. 2000). See also *Eitel v. McCool*, 782 F.2d 1470,

7  1472 (9th Cir. 1986) (there is a "strong policy underlying the Federal Rules of

8  Civil Procedure favoring decisions on the merits").

9  ### IV. <u>ARGUMENT</u>

10 **A. Plaintiffs' Right to Familial Association Was Violated When**

11 **Defendants Failed to Give Notice Prior to Subjecting Plaintiffs'**

12 **Children to Medical Examinations**

13  As of the year 2019, it was clearly established law that parents are

14 entitled to notice and an opportunity to be heard before state actors subject

15 their children to medical examinations, where at least one of the purposes is

16 investigatory.

17  In *Wallis v. Spencer*, the Ninth Circuit Court of Appeals reaffirmed that

18 "(t)he right to family association includes the right of parents to make

19 important medical decisions for their children, and of children to have those

20 decisions made by their parents rather than the state." *Wallis ex rel. Wallis v.*

21 *Spencer*, 202 F.3d 1126, 1141 (9th Cir. 1999) ("*Wallis*"). In the absence of

22 parental consent, "physical examinations of their child may not be undertaken

23 for investigative purposes at the behest of state officials unless a judicial

24 officer has determined, upon notice to the parents, and an opportunity to be

25 heard, that grounds for such an examination exist and that the administration of

26 the procedure is reasonable under all the circumstances." *Id.*, quoting *van*

27 *Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 911 F.2d 863, 867 (2d Cir. 1990).

28 "Barring a reasonable concern that material physical evidence might dissipate,

1   (citation) or that some urgent medical problem exists requiring immediate

2   attention, the state is required to notify parents and to obtain judicial approval

3   before children are subjected to investigatory physical examinations." *Id.*

4   (Internal citation omitted).

5         In *Mann v. City of San Diego,* the Ninth Circuit Court of Appeals

6   extended the Constitutional guarantee of notice and an opportunity to be heard

7   to dual purpose medical examinations where one of the purposes is

8   investigatory. *Mann v. Cty. Of San Diego*, 907 F.3d 1154, 1161 (9ᵗʰ Cir. 2018)

9   ("*Mann*"). There, the County of San Diego argued that routine physical

10  examinations of children upon intake at a County run facility were not

11  investigatory, but merely taken to assess the health of the child. *Id.* The Court

12  was not persuaded. Medical examinations of young children are likely to have

13  the additional purpose of investigating potential child abuse and uncovering

14  evidence of a crime. *Id.* It is particularly difficult to disentangle the goal of

15  protecting a child's welfare from general law enforcement purpose, "because

16  California law requires mandatory reporters such as medical professionals to

17  notify law enforcement agencies if they identify signs of child abuse." *Id.*,

18  citing *Greene v. Camreta*, 588 F.3d 1011, 1027 (9ᵗʰ Cir. 2009) and Cal. Penal

19  Code § 11165.7. Thus, "a child's medical examination may turn investigatory

20  even if the examination does not begin as such." *Id*. at 1162. The court had no

21  trouble determining that the routine visual and tactile examination of children

22  at the Polinsky Children's center had an investigatory component.

23        The *Mann* court also held that the level of invasiveness of the medical

24  examination is irrelevant to the constitutional inquiry. "A parent's due process

25  right to notice and consent is not dependent on the particular procedures

26  involved in the examination, or the environment in which the examinations

27  occur, or whether the procedure is invasive, or whether the child demonstrably

28  protests the examinations." *Mann, supra*, 907 F.3d 1154, 1162.

Here, Plaintiffs adequately plead a violation of the right to notice and an opportunity to be heard regarding the two medical examinations targeted by Defendant Piva in her motion to strike.

**1. Defendant Piva Violated Plaintiffs' Rights by Failing to Give Notice of The Medical Examination on March 21, 2019**

The March 21, 2019 examination occurred without notice after (1) a foster parent made a report that Plaintiffs' children were possible victims of sexual abuse and physical abuse (SAC ¶ 39), (2) the juvenile court denied Defendants' request to exclude Plaintiff Bernhard from medical visits, (3) Plaintiff Bernhard noticed bruises on the side of At.B's face and blood coming out of her ear (SAC ¶ 44), and (4) the County changed the foster care placement of At.B without notice to Plaintiffs (SAC ¶ 47). On information and belief, Plaintiffs allege that the medical visit included a full physical examination, as there were various "sores" and "boils "all over the child's body." SAC ¶ 48.

Defendant Piva concedes the investigatory nature of the medical examination, in that she relies upon California Welfare & Institutions Code § 324.5(a), which authorizes the physical examination of a child taken into protective custody "by a medical practitioner who has specialized training in detecting and treating child abuse injuries and neglect." Cal. Welf. & Inst. Code § 324.5(a).

Because there is no dispute that the non-emergent medical visit was undertaken "without notice to Plaintiffs, without their consent or presence, and without a court order," Plaintiffs' rights were violated. SAC ¶ 48.

**2. Defendant Piva Violated Plaintiffs' Rights by Failing to Give Notice of The Medical Examination on April 14, 2019**

The April 14, 2019 medical visit occurred without notice after (1) Plaintiffs learned of the March 21, 2019 medical examination, (2) Plaintiffs

1

2

3

4

5

demanded notice of any future doctor visits (SAC ¶ 49), (3) the Juvenile Court ordered HSA to give notice to Plaintiffs of future medical appointments (SAC ¶ 50), (4) the child At.B. was so sick that a visit with Plaintiffs had to be canceled (SAC ¶ 51), and (5) Plaintiffs requested notice of any medical appointment related to At.B.'s illness (SAC ¶52).

6

7

8

Again, Defendant Piva concedes the investigatory nature of the medical examination, in that she relies upon California Welfare & Institutions Code § 324.5(a), as authorizing the medical visit.

9

10

There is no dispute that Plaintiffs were deprived of notice of this non-emergent medical visit. Therefore, Plaintiffs' due process rights were violated.

11

12

**B. Plaintiffs' Right to Familial Association In Being With Their Children While They Are Receiving Medical Attention Was Violated**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In addition to the right to notice, parents have a well-established right "arising from the liberty interest in family association to be with their children while they are receiving medical attention." *Wallis, supra,* 202 F.3d 1126, 1142. Children "have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures, including examinations." *Id.* "The language of *Wallis* is clear and unambiguous: government officials cannot exclude parents entirely from the location of their child's physical examination absent parental consent, some legitimate basis for exclusion, or an emergency requiring immediate medical attention." *Greene v. Camreta, supra*, 588 F.3d 1011, 1037, vacated in part as moot by *Greene v. Camreta*, 661 F.3d 1201, 1201 (9th Cir. 2011). See also *Benavidez v. Cty. Of San Diego*, 993 F.3d 1134, 1150 (9th Cir. 2021) ("Our most recent case on point, *Mann*, makes clear that the County is required to: (1) notify the parents of a medical examination of their children; (2) obtain parental consent or a court order in advance of the medical examination; and (3) permit the parent to be present at the examination").

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs allege that Defendants intentionally excluded them from the medical examinations that took place on March 21, 2019 and April 14, 2019, despite the juvenile court's order to the contrary and Plaintiffs' express demand for notice. These facts are undisputed in Piva's motion to strike. Piva relies solely on California Welfare & Institutions Code § 324.5(a) and California Health & Safety Code § 1530.6(a)(3), neither of which authorizes the medical examination of children without notice to the parents or their exclusion, as discussed below.

**C. Neither Welfare & Institutions Code § 324.5(a) nor Health & Safety Code § 1530.6(a)(3) Dispense of Plaintiffs' Right to Notice and Be Present at Medical Examinations**

The first inquiry in any Section 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States. *Martinez v. Califor*nia, 444 U.S. 277, 284 (1980). The answer to that inquiry disposes of the case. *Ibid*. Conduct that is wrongful under section 1983 cannot be immunized by state law. *Id.* at 284. See also *Wallis*, *supra*, 202 F.3d at 1144 (the district court erred when it "applied state statutory immunities for child abuse investigations to the federal constitutional claims and concluded that the City is immune from a § 1983 action under a state immunity statute"). Any construction of a federal statute which permits a state law immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise. *Martinez, supra*, 444 U.S. at 284 n.8. See also *Felder v. Casey*, 487 U.S. 131, 138 (1988) ("any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield").

Here, Defendant Piva relies upon Welfare & Institutions Code § 324.5(a) and Health & Safety Code §1530.6(a)(3) for the proposition that the medical examinations were "authorized," regardless of Plaintiffs' lack of consent, and,

1   in relying upon said statutes, she is entitled to qualified immunity. She is

2   wrong. Neither of these statutes provide that medical examinations of children

3   may take place without parental notice or the parents' attendance at the visit.

4   They can be harmonized with well-established Ninth Circuit precedent.

5        In *Wallis*, the Court did not have occasion to consider the effect of

6   Welfare & Institutions Code §324.5, because the statute was enacted after the

7   medical examinations in that case. However, the *Wallis* court suggested "there

8   is no apparent conflict between the requirements of this opinion and [Cal.

9   Welf. & Inst. Code, §324.5]." *Wallis, supra*, 202 F.3d at 1141 n.12, citing

10   *Tenenbaum v. Williams,* 907 F. Supp. 606 (E.D.N.Y. 1995) (holding that a

11   New York statute allowing local officials to give consent for medical services

12   for a child in protective custody did not affect the court's conclusion that due

13   process required that the Commissioner of Social Services obtain judicial

14   authorization for a purely investigatory examination issued after notice and an

15   opportunity to be heard had been furnished to the parents), aff'd in part and

16   vacated in part, *Tenenbaum v. Williams*, 193 F.3d 581, 604 (2d Cir. 1999)).

17        In *Doe v. Lebbos*, 348 F.3d 820 (2003), the Ninth Circuit Court of

18   Appeals, well aware that Welfare & Institutions Code § 324.5 was in effect,

19   nonetheless found that an unwarranted and non-consensual sexual abuse

20   examination violated constitutional rights. *Doe, supra,* 348 F.3d at 828-830,

21   n.14. In fact, the social worker in that case was credited with knowledge about

22   Section 324.5 and still determined to have violated Plaintiffs rights. Thus, a

23   clear message was conveyed that Section § 324.5 provided no basis for

24   ignoring the due process rights of parents to notice and an opportunity to be

25   present during medical examinations.

26        In *Swartwood v. County of San Diego*, 84 F. Supp. 3d 1093 (S.D. Cal.

27   2014), the Court again held that Cal. Welf. & Inst. Code, §324.5 does not

28

authorize medical examinations without parental notice and consent or in the absence of judicial authorization. *Swartwood, supra*, 84 F. Supp. 3d at 1122.

In *Mann v. Cnty. Of San Diego*, 147 F. Supp. 3d 1066 (S.D. Cal. 2015), the Court affirmed that Section 324.5 "does not override the due process guarantees of the Constitution." *Id*. at 1083.

Similarly, in *Reynolds v. County of San Diego*, 224 F. Supp.3d 1034 (S.D. Cal. 2016), the court found that "even though Section 324.5 authorizes medical examinations, the Section does not authorize the examination absent parental notice." *Id*. at 1068.

In *Greene*, the district court held that medical examinations performed on a child did not violate the plaintiffs' constitutional rights, because, in part, the examinations "conformed with Oregon statutory and administrative law." *Greene*, *supra*, 588 F.3d at 1020-1021, see *Greene v. Camreta*, 2006 U.S. Dist. LEXIS 16764, *12 and 19-20 (D. Or. 2006) ("See Or. Rev. Stat. § 419B.337 (stating that after a child is placed in state custody, DHS has discretion in the planning and provision of care, supervision, and services); Or. Admin. R. 413 015 0720(4) (allowing DHS workers to exclude an abused child's parent if the parent's presence may impede the interview).").

Despite Oregon's clear statutory prescriptions, this Court reversed, and found that the defendants violated plaintiffs' clearly established constitutional rights by excluding the mother from the examination facility. *Greene, supra*, 588 F.3d at 1036-37.

Against this well-established precedent, Defendant Piva points to a lone, aberrant district court order, *N.L. v. Children's Hosp. L.A*., 2016 U.S. Dist. Lexis 196827, at *7-11 (C.D. Cal. Mar. 25, 2016), to suggest that the waters are murky. There, the district court applied Section 324.5 to find that said section authorized county social workers "to seek medical examinations for a

1  minor in their custody," and that plaintiffs therefore lacked standing as having

2  suffered no injury in fact.

3  That is not, however, the end of the story. Upon the filing of a Second

4  Amended Complaint, the defendants renewed their attack on the basis that state

5  law provides for the non-consensual medical examination of suspected child

6  abuse victims and that defendants' conduct is not actionable under Section

7  1983 because defendants are not state actors. *N.L. v. Childrens Hosp. L.A*., No.

8  CV 15-07200-AB (FFMx), 2016 U.S. Dist. LEXIS 197697, at *7 (C.D. Cal.

9  June 22, 2016). The district court granted the Rule 12(b)(6) motion on the

10  grounds that state action was in adequately pled, but incorporated by reference

11  its order for dismissal based on Section 324.5 as an issue it did not reach. *Id.* at

12  n.5. The order was reversed and remanded in *N.L. v. Childrens Hosp. L.A*., 711

13  F. App'x 433, 433 (9th Cir. 2018), and the case ultimately settled.

14  In any event, whatever remaining ambiguity existed was resolved in

15  2018, with the *Mann* decision, when the Ninth Circuit adopted the reasoning in

16  *Swartwood*, 84 F. Supp. 3d at 1118, in finding that the intrusiveness of a

17  medical examination is irrelevant, and declared that "a parent's right to notice

18  and consent is an essential protection for the child and the parent, no matter

19  what procedures are used." *Mann*, 907 F.3d at 1161.

20  For the same reasons, Health & Safety Code section 1530.6 cannot be

21  asserted as basis to impede the vindication of Plaintiffs' well-established civil

22  rights. Nothing in the text of Section 1530.6 obviates the need to give notice to

23  the parents or afford the parents the opportunity to be present during the

24  medical examination of their child. Furthermore, the statute was enacted prior

25  to the *Mann* decision.

26  Based on the facts alleged in the Second Amended Complaint, Section

27  1530.6 is also inapplicable. The ability of foster care licensees to consent to

28  medical care is qualified. Said statute only authorizes consent for "ordinary

- 14 -

medical and dental treatment," and plainly states that "[t]his section does not apply to any situation in which a juvenile court order expressly reserves the right to consent to those activities to the court." Cal. Health & Safety Code § 1530.6(a)(3),(c). Plaintiffs allege that the March 21 and April 14, 2019 visits were routine. They were irregular, and for that reason, Plaintiffs were excluded, regardless of the type of treatment prescribed by the doctor. Moreover, Plaintiffs allege that Defendant Piva disobeyed the express order of the juvenile court that Plaintiffs be given notice and an opportunity to attend all medical appointments.

**D. Defendant Piva's Motion Does Not Meet the Criteria for Striking Allegations Under Rule 12(f)**

Only "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" may be stricken from a pleading under Rule 12(f).

There is no dispute that the matters sought to be stricken constitute an insufficient defense, redundant, or scandalous matter.

The matters sought to be stricken are not immaterial. "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone, Inc. v. Handi-Craft Co.*, *supra*, 618 F.3d 970, 974. Here, the allegations concerning the subject medical appointments relate to Plaintiffs' claims that Piva violated their right to familial association by failing to give notice of medical examinations and allowing Plaintiffs to be present. These allegations are also relevant to Plaintiffs' claim that the County of San Joaquin's constitutionally deficient policies, practices, and customs were the moving force behind Plaintiffs' deprivation of rights, to wit:  these types of violations were repeated throughout the detention of Plaintiffs' children.

The matters ought to be stricken are not "impertinent." "Impertinent matter consists of statements that do not pertain, and are not necessary, to the

- 15 -

issues in question." *Whittlestone, Inc. v. Handi-Craft Co., supra*, 618 F.3d at 974. Here, the allegations relate not only to the proof of claims but also the measure of damages, as each violation of Plaintiffs' rights had a cumulative effect of further degrading and injuring Plaintiffs.

It is also worth mentioning that if the court takes the extreme measure of striking the incidents that occurred on March 21 and April 14, 2019 from the Second Amended Complaint, Plaintiffs will effectively be barred from seeking discovery into the facts regarding the medical visits that they were not notified of and were excluded from. Fed. R. Civ. P. 26(b)(1).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to deny Defendant Sonia Piva's motion to strike in its entirety.

Dated: 5/12/2023          **LAW OFFICE OF SAMUEL H. PARK, APC**

By:   /s/ Samuel H. Park
Samuel H. Park,
Attorney for All Plaintiffs