UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD THOMAS BERNHARD, II, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN JOAQUIN, et al. <br><br> Defendants. | No. 2:21-cv-00172-TLN-DB <br><br> **ORDER** |

This matter is before the Court on Defendant Leslie Billings's ("Billings") Motion to Dismiss. (ECF No. 80.) Plaintiffs Lloyd Thomas Bernard II and Stephanie Tejeda-Otero (collectively, "Plaintiffs") filed an opposition. (ECF No. 82.) Billings filed a reply. (ECF No. 86.) For the reasons set forth below, the Court hereby DENIES Billings's motion to dismiss.

///
///
///
///
///

1

Also pending before the Court is Billings and Defendant[1] Sonia Piva's ("Piva") Motions to Strike Paragraphs 48 and 53 of Plaintiffs' Second Amended Complaint ("SAC"). (ECF Nos. 69, 81.) Plaintiffs filed oppositions. (ECF Nos. 73, 83.) Billings and Piva filed replies. (ECF Nos. 79, 85.) For the reasons set forth below, the Court herby DENIES Billings and Piva's motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the care and treatment of Plaintiffs' children, At.B and Al.B (collectively, "Plaintiffs' children"), while they were in San Joaquin County Human Services Agency's ("HSA") custody. (ECF No. 65.) At all relevant times, Billings and Piva were HSA employees. (*Id*. at 2.) On December 16, 2018, HSA received a "referral of general neglect" after Plaintiffs' neighbor called the police to report that At.B was playing in the street without adult supervision and was nearly hit by a car. (*Id*. at 4–5.) On January 16, 2019, a juvenile court ordered Plaintiffs' children be removed from Plaintiffs' custody and placed in HSA's custody. (*Id*. at 6.) On January 29, 2019, Billings and Piva removed Plaintiffs' children from Plaintiffs' home and took them to Mary Graham Childrens' Shelter, where Plaintiffs allege HSA and shelter staff performed a bodily examination on Plaintiffs' children without Plaintiffs' consent. (*Id*.) On an unspecified date, Plaintiffs further allege Billings and Piva took Plaintiffs' children to San Joaquin General Hospital without their consent to screen Plaintiffs' children for physical abuse. (*Id*. at 8.)

At some point thereafter, Plaintiffs' children were placed with a foster parent. (*Id*. at 9.) On February 20, 2019, the foster parent reported to HSA staff that Plaintiffs' children were possible victims of sexual and physical abuse. (*Id*.) Plaintiffs allege HSA staff then conducted another physical examination of Plaintiffs' children without Plaintiffs' consent. (*Id*. at 10.) On March 6, 2019, during a supervised visit with their children, Plaintiffs allege they noticed bruises and blood on one of their children and notified Billings, who directed the foster parent to prepare an incident report. (*Id*. at 10–11.) Plaintiffs allege HSA staff then placed the children with a

---

[1] There are five named Defendants and ten Doe Defendants in this action. (ECF No. 65.) Only Billings and Piva are parties to the instant motions.

different foster parent, and, on March 21, 2019, this new foster parent took At.B to urgent care where he received antibiotics for "sores" on his body without Plaintiffs knowledge or consent. (*Id*. at 11.)  At an April 3, 2019 juvenile court hearing, Plaintiffs allege they raised their concerns to the court regarding not being able to attend their children's medical appointments, who ordered HSA to notify Plaintiffs of any future medical appointments.  (*Id*. at 12.)  However, Plaintiffs allege their children continued to attend medical appoints and receive various vaccinations without their knowledge or consent.  (*Id*. at 12–13.)

      On January 18, 2021, Plaintiffs, proceeding pro se, initiated this action against the County, HSA, and seven HSA employees, including Billings and Piva.  (ECF No. 1.)  However, by April 11, 2022, Plaintiffs had not yet served any Defendants named in the action.  (ECF No. 10.)  The Court then ordered Plaintiffs to show cause as to why this action should not be dismissed for failure to prosecute.  (*Id*.)  On May 13, 2022, Billings filed a motion to dismiss for insufficient service of process.  (ECF No. 13.)  This Court granted Billings's motion with leave to amend. (ECF No. 25.)  On December 30, 2022, Plaintiffs filed their First Amended Complaint, but still failed to serve process on Billings, who filed another motion to dismiss for insufficient service of process.  (ECF Nos. 26, 54.)  On January 24, 2023, Piva filed a motion to dismiss for failure to state a claim.  (ECF No. 47.)  On February 22, 2023, attorneys Shawn A. McMillan and Samuel H. Park took over as counsel for Plaintiffs.  (ECF Nos. 58–61.)

      On March 1, 2023, counsel for both Defendants and Plaintiffs filed a stipulation agreement with the Court (the "Stipulation Agreement and Order") in which Plaintiffs agreed to dismiss certain claims and defendants from this action.  (ECF No. 62.)  In return, Defendants' attorneys agreed to withdraw all then pending motions to dismiss, including Billings and Piva's then pending motions to dismiss, and allowed Plaintiffs to file a second amended complaint.  On March 29, 2023, Plaintiffs filed the operative Second Amended Complaint ("SAC"), asserting the following violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983 ("§ 1983"): (1) First Amendment interference with familial relations against four HSA employees, including Billings and Piva, and ten Doe Defendants; (2) First Amendment retaliation claims against the same Defendants; and (3) *Monell* liability against San Joaquin County.  (ECF No. 65.)

On May 18, 2023, Plaintiffs filed a proof of service with the Court, stating Plaintiffs' counsel served Billings on May 18, 2023. (ECF No. 77.) On April 28, 2023, Piva filed the instant motion to strike Paragraphs 48 and 53 from the SAC. (ECF No. 69.) On June 5, 2023, Billings filed the instant motion to dismiss and motion to strike Paragraphs 48 and 53 from the SAC. (ECF Nos. 80, 81.) The Court will first address Billings's motion to dismiss (ECF No. 80) and then address Billings and Piva's motions to strike (ECF No. 69, 81).

## II.    BILLINGS'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

### A.    Standard of Law

Under Rule 12(b)(5), a defendant may challenge any deviation from the proper procedures of serving a summons and complaint pursuant to Rule 4 as "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule] 4." *Direct Mil Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Under Rule 4(m), service of process is deemed insufficient "[i]f a defendant is not served within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). Rule 4(m) permits a district court to grant an extension of time to serve the complaint. *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir.2003). The court may even extend "time for service retroactively after the [90] day service[2] period has expired." *U.S. v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 772 (9th Cir.2004); *Mann*, 324 F.3d at 1090. If the plaintiff shows good cause for failing to serve, the court is required to extend the time period for service. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir.2009); *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir.2007). If there is no good cause, the court has discretion to either dismiss the complaint without prejudice or to extend time to serve the complaint. *Lemoge*, 587

---

[2]    On December 1, 2015, the presumptive time for serving a defendant under Rule 4 was reduced from 120 days to 90 days. Fed. R. Civ. Proc. 4(m); *see* Committee Notes on Rules–2015 Amendment.

4

F.3d at 1198; *Efaw*, 473 F.3d at 1040.  A district court has broad discretion under Rule 4(m) to extend time for service even without a showing of good cause.  *Efaw*, 473 F.3d at 1040; *2,164 Watches*, 366 F.3d at 772.  In making extension decisions under Rule 4(m), a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.  *Scott v. Sebelius*, 379 F. App'x 603, 604–05 (9th Cir. 2010); *Efaw*, 473 F.3d at 1041.

        B.        <u>Analysis</u>

Billings moves to dismiss all claims against her in the SAC under Rule 12(b)(5) because Plaintiffs failed to serve her with process within the time allowed by Rule 4(m) or by order of this Court.  (ECF No. 80 at 3.)  In opposition, Plaintiffs argue Billings's motion "should be denied because good cause supports Plaintiffs' efforts to secure service of process."  (ECF No. 82 at 4.)  Alternatively, Plaintiffs request the Court exercise its discretion under Rule 4(m) and deny Billing's motion because they would otherwise be time-barred from re-filing their claims against Billings.  (*Id*. at 5.)

        *i.*        *Good Cause*

"Rule 4(m) requires a district court to grant an extension of time for [untimely] service when the plaintiff shows good cause for the delay."  *Marsh-Girardi v. Client Resol. Mgmt., LLC*, No. 2:19-cv-02188-JAM-AC, 2020 WL 968570, at *4 (E. D. Cal. Feb. 28, 2020).  The "good cause" exception to Rule 4(m) applies only in limited circumstances and is not satisfied by inadvertent error or ignorance of the governing rules.  *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985); *see Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV F 09-2101 LJO MJS, 2010 WL 5313514, at *2 (E.D. Cal. Dec. 20, 2010) ("The good cause determination depends upon whether plaintiff made a reasonable effort to effect service[.]").

Plaintiffs argue good cause to excuse their delay in service exists because Billings evaded service for over a year.  (ECF No. 82 at 4.)  More specifically, Plaintiffs allege Billings "refus[ed] to accept service of the summons and complaint, either through counsel, or at a designated time and place[,] . . . refus[ed] to provide her residence address[,] and did not disclose to Plaintiffs that she no longer worked for HSA and had moved out of state to Tennessee."  (*Id*.)

A "defendant's evasion of service or attempts to frustrate service have been found 'good cause' for delay in effecting service." *Intrade Indus., Inc. v. Foreign Cargo Mgmt. Corp.*, No. 1:07-CV-1893 AWI GSA, 2008 WL 5397495, at *1 (E.D. Cal. Dec. 24, 2008). However, the record before the Court demonstrates it was Plaintiffs' lack of diligence, as opposed to Billings's conduct, which led to Plaintiffs failure to comply with Rule 4(m).

As an initial matter, Billings was under no obligation to accept service of process through her attorney, and Plaintiffs cite no authority to support their contention that Billings's failure to accept service of process through her attorney constitutes evasion. *See Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987).

Additionally, the Court finds, in the over two and a half years it took Plaintiffs to serve Billings, Plaintiffs were not prevented from timely serving Billings by factors beyond Plaintiffs' control. (ECF No. 80 at 7.) The procedural history in this case related to Plaintiffs' failure to properly serve Billings is extensive and has been previously addressed in the Court's December 17, 2021 and December 5, 2022 Orders. (*See* ECF Nos. 9, 25.) In the Court's December 5, 2022 Order, the Court granted Billings 's motion to dismiss Plaintiffs' First Amended Complaint under Rule 12(b)(5) and allowed Plaintiffs, who were at the time proceeding pro se, to file another amended complaint and file proof of service of the amended complaint on Billings by February 5, 2023. (ECF No. 25.) In January 2023, Plaintiffs filed multiple proofs of service claiming they served process on Billings, but they never did. Specifically, the proofs of service claim they delivered process to an unidentified person at a residence Billings never lived at and to someone at HSA where Billings no longer worked. (ECF No. 40.) Plaintiffs did not seek leave for additional time to serve Billings and missed the Court's February 5, 2023 deadline to serve Billings. After Plaintiffs retained counsel, the parties entered into the Stipulation Agreement and Order where Billings's counsel agreed to withdraw her then pending motion to dismiss for insufficient service of process. (ECF No. 64.)

Notably, Plaintiffs' counsel did not ask Billings to waive service of process through the Stipulation Agreement and Order and Plaintiffs did not serve Billings until May 18, 2023. (ECF Nos. 77, 86.) Plaintiffs attempt to excuse the additional two-and-a-half-month delay in serving

1    Billings on her counsel's refusal to share her current address with Plaintiffs' counsel and cite

2    *Donaldson v. Garland* in support.  (ECF No. 82 at 12); No. 221CV1178TLNKJNP, 2022 WL

3    17252701 (E.D. Cal. Nov. 28, 2022).  However, nowhere in *Donaldson* does the Court hold that a

4    defendant must disclose their address to a plaintiff.  2022 WL 17252701.  In *Donaldson*, the

5    Court merely granted a request for early discovery so plaintiffs could conduct discovery regarding

6    the defendant's address.  *Id*. at *4.  Moreover, to the extent it is Plaintiffs' position that there was

7    no point in serving Billings until after Plaintiffs filed the SAC on March 29, 2023, Plaintiffs cite

8    no authority that its decision to file amended pleadings justifies non-compliance with Rule 4(m).

9    *See Flexpand, LLC v. CREAM, Inc.*, No. C 19-0878 SBA, 2020 WL 13505087, at *2 (N.D. Cal.

10   Sept. 1, 2020).

11         Given "[p]laintiffs are responsible for diligently prosecuting their case, including taking

12   reasonable steps to ensure that service is timely effectuated in compliance with Rule 4(m)," the

13   Court finds Plaintiffs have not offered a reasonable explanation as to why it took Plaintiffs eight

14   hundred and forty days to serve Billings.  *Crowley v. Factor 5, Inc.*, No. C 11-05528 SBA, 2014

15   WL 1868851, at *3 (N.D. Cal. May 7, 2014). Thus, the Court finds Plaintiffs have not shown

16   good cause for their failure to timely serve Billings.

17                       *ii.*      *Discretion*

18         Even in the absence of good cause, the Court nevertheless has discretion to excuse

19   Plaintiffs' delay in serving Billings.  The factors a court may consider in deciding whether to

20   grant such relief are whether: (1) the applicable statute of limitations would bar the refiled action;

21   (2) the individual defendants had actual notice of the claims asserted in the complaint; (3) the

22   individual defendants would be prejudiced by extending the deadlines to effect service; and (4)

23   the individual defendants were eventually served.  *Efaw*, 473 F.3d at 1041.

24         Plaintiffs argue the Court should exercise its discretion because if Billings's "motion is

25   granted, and suit is dismissed against her, Plaintiffs' claims will be time-barred [and] Plaintiffs

26   will be unable to hold [Billings] accountable for her participation in the violation of Plaintiffs'

27   rights."  (ECF No. 82 at 15.)  Relief under Rule 4(m) may be appropriate if the applicable statute

28   of limitation would prevent a plaintiff from re-filing their action.  *See* Rule 4, Advisory

7

Committee Note to 1993 Amendments, Subdivision (m); *Acosta*, 2010 WL 2817061, at *3. The Ninth Circuit also holds dismissal where the statute of limitation has run out is the "ultimate" prejudice to a plaintiff. *Lemoge*, 587 F.3d at 1195. Moreover, § 1983 claims, such as this one, may be afforded even greater protection given that public policy favors such cases be resolved on the merits given their nature. *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998) (citing *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987)).

§ 1983 does not specify a statute of limitations for claims arising under it. Rather, 42 U.S.C. § 1988 provides that courts should look to the most analogous state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985). In the instant case, the most analogous state statute of limitations to a § 1983 claim is California's personal injury statute of limitations, which is two years. Cal. Civ. Proc. Code § 335.1; *see Owens v. Okure*, 488 U.S. 235, 251 (1989) (holding when a state has multiple personal injury statute of limitations, federal courts should apply a state's catch-all personal injury statute of limitations to § 1983 actions).

The SAC alleges § 1983 violations against Billings that occurred between January 29, 2019 and April 10, 2019. (ECF No. 65.) If the Court were to grant Billings's motion and applying California's two-year statute of limitations for personal injury claims, Plaintiffs would be time-barred from re-filing an action alleging claims arising from these events. Given the extraordinary weight courts must give to such an outcome, especially as it pertains to § 1983 claims, this factor weighs heavily in favor of excusing Plaintiffs' untimely service.

Moreover, the Court finds relief under Rule 4(m) is appropriate because Billings had actual notice of this action since at least May 13, 2022, when she filled her first motion to dismiss for insufficient service of process (ECF No. 13), and Plaintiffs eventually served Billings on May 18, 2023. (ECF No. 77.) However, Billings argues dismissal is warranted because "[i]t will be an extreme inconvenience for [her] to have to travel to California for things such as depositions, hearings, or a trial," and "it would be expensive for counsel to travel to Tennessee for purposes of meeting with her or conducting discovery of her." (ECF No. 86 at 7.) Billings further alleges she "will not have access to any of the HSA's documents" as she has not worked for the County for more than two years. (*Id*. at 6.) Finally, Billings argues "it can reasonably be expected this case

will go on for a significant amount of time" since this lawsuit is merely at the pleading stage. (*Id.* at 7.) While Billings may find it inconvenient to have to defend herself in this action, "[t]here is no argument or evidence that pertinent records have been destroyed or relevant witnesses can no longer remember the events underlying this action," nor is there any evidence Billings cannot subpoena HSA for any record needed in her defense. *Acosta v. Tourner*, No. 1:09-CV-01560AWIGSA, 2010 WL 3431768, at *5 (E.D. Cal. Aug. 31, 2010). Thus, the Court sees little prejudice to Billings because of Plaintiffs' delay in service.

Accordingly, the Court finds relief under Rule 4(m) for Plaintiffs' delay in service is appropriate, and the Court DENIES Billings's motion to dismiss under Rule 12(b)(5) (ECF No. 80).

**III.   BILLINGS AND PIVA'S MOTIONS TO STRIKE PARAGRAPHS 48 AND 53 OF THE SAC**

Billings and Piva[3] move to strike Paragraphs 48 and 53 of the SAC under Rule 12(f). (ECF Nos. 69, 81.) In Paragraphs 48 and 53 of the SAC, Plaintiffs allege Billings and Piva were involved in or authorized the medical examinations performed on Plaintiffs' children while they were in HSA custody. (ECF No. 65 at 11–12.) Billings and Piva argue these paragraphs should be stricken because they are immaterial. (ECF No. 69 at 2; ECF No. 81 at 2.)

A.   Standard of Law

Under 12(f), "[t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Fogerty*, 984 F.2d at 1527.

When ruling on a motion to strike, a court views the pleading under attack in the light

---

[3]   The Court notes, while Billings and Piva filed separate motions to strike, the arguments made in both motions are nearly identical to each other. (*See* ECF No. 69, 81.)

9

1 most favorable to the nonmoving party. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). "Courts generally disfavor motions to strike because striking is such a drastic remedy." *Vartanian v. Nationwide Legal, Inc.*, No. C-12-0691 EMC, 2012 WL 2054995, at *2 (N.D. Cal. June 5, 2012) (quoting *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("striking a party's pleadings is an extreme measure, and, as a result, we have previously held that 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted'")).

B. Analysis

Billings and Piva assert Paragraphs 48 and 53 should be stricken as immaterial because the medical examinations discussed in these paragraphs were authorized under California law and both Billings and Piva are entitled to qualified immunity. (ECF No. 69 at 3; ECF No. 81 at 3.) In opposition, Plaintiffs argue these paragraphs are "material and pertinent to Plaintiffs' Fourteenth Amendment right to familial association …." (ECF No. 83 at 5.)

The Court agrees with Plaintiffs. The paragraphs Billings and Piva seek to strike contain factual allegations about allegedly unauthorized medical examinations performed on Plaintiffs' children, which directly relate to Plaintiffs' § 1983 claims against Billings and Piva. Nowhere in either Billings or Piva's respective briefing do they argue why discussion of these medical examinations has no bearing on the claims against them. Rather, Billings and Piva argue Paragraphs 48 and 53 are immaterial because the medical examinations performed on Plaintiffs' children were authorized under California law and both Billings and Piva are therefore entitled to qualified immunity. (ECF No. 69 at 3; ECF No. 81 at 3.)

However, "Rule 12(f) 'is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'" *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (quoting 5 Wright & Miller, Federal Prac. & Proc. § 1380, at 782). Thus, to the extent Billings and Piva seek to strike Plaintiffs' allegations because they fail to state a claim or are legally precluded because they are entitled to qualified immunity, such arguments are generally not permitted on a motion to strike. This is because "courts are generally reluctant to determine disputed or substantial questions of law on a motion to strike." *S.E.C. v. Sands*, 902 F. Supp.

10

1149, 1166 (C.D. Cal. 1995); *see also Whittlestone*, 618 F.3d at 976 (holding that Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law."). Moreover, "[w]ere we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading … we would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion … already serves such a purpose." *Whittlestone*, 618 F.3d at 974. Therefore, the Court declines to consider whether Paragraphs 48 and 53 should be stricken because Billings and Piva are entitled to qualified immunity.

Given Billings and Piva provide no other basis to strike Paragraphs 48 and 53, the Court DENIES both Billings and Piva's motions to strike under Rule 12(f). (ECF Nos. 69, 81.)

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Billings's Motion to Dismiss (ECF No. 80), and the Court DENIES Billings and Piva's Motions to Strike (ECF Nos. 69, 81). The Court ORDERS Billings and Piva to file an answer with regards to the claims against them in the SAC within twenty-one (21) days of the electronic filing date of this Order.

IT IS SO ORDERED.

Date: February 2, 2024

Troy L. Nunley
United States District Judge