1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   LLOYD THOMAS BERNHARD, II, et al.,        No.  2:21-cv-00172-TLN-DB

12                 Plaintiffs,

13          v.                                 **ORDER**

14   COUNTY OF SAN JOAQUIN, et al.,

15                 Defendants.

16

17          This matter is before the Court on Defendants Yeni Gonzales ("Gonzales") and County of

18   San Joaquin's (the "County") (collectively, "Defendants")[1] Motion to Dismiss.  (ECF No. 70.)

19   Plaintiffs Lloyd Thomas Bernard II and Stephanie Tejeda-Otero (collectively, "Plaintiffs") filed

20   an opposition.  (ECF No. 72.)  Defendants filed a reply.  (ECF No. 78.)  For the reasons set forth

21   below, the Court GRANTS Defendants' motion.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ───────────────

28   [1]       There are five named Defendants and ten Doe Defendants in this action.  (ECF No. 65.)
     Only Gonzales and the County are parties to the instant motion.

1          I.      FACTUAL AND PROCEDURAL BACKGROUND

2          This case concerns the care and treatment of Plaintiffs' children, At.B and Al.B

3  (collectively, "Plaintiffs' children"), while they were in San Joaquin County Human Services

4  Agency's ("HSA") custody.  (ECF No. 65.)  At all relevant times, Gonzales was an HSA

5  employee.  (*Id*. at 2.)  On December 16, 2018, HSA received a "referral of general neglect" after

6  Plaintiffs' neighbor called the police to report that At.B was playing in the street without adult

7  supervision and was nearly hit by a car.  (*Id*. at 4–5.)  On January 16, 2019, a juvenile court

8  ordered Plaintiffs' children be removed from Plaintiffs' custody and placed in HSA's custody.

9  (*Id*. at 6.)  On January 29, 2019, HSA staff removed Plaintiffs' children from Plaintiffs' home and

10  took them to Mary Graham Childrens' Shelter, where Plaintiffs allege HSA and shelter staff

11  performed a bodily examination on Plaintiffs' children without Plaintiffs' consent.  (*Id*.)  On an

12  unspecified date, Plaintiffs further allege HSA staff took Plaintiffs' children to San Joaquin

13  General Hospital without their consent to screen Plaintiffs' children for physical abuse.  (*Id*. at 7.)

14          At some point thereafter, Plaintiffs' children were placed with a foster parent.  (*Id*. at 9.)

15  On February 20, 2019, the foster parent reported to HSA staff that Plaintiffs' children were

16  possible victims of sexual and physical abuse.  (*Id*.)  Plaintiffs allege HSA staff then conducted

17  another physical examination of Plaintiffs' children without Plaintiffs' consent.  (*Id*. at 10.)  On

18  March 6, 2019, during a supervised visit with their children, Plaintiffs allege they noticed bruises

19  and blood on one of their children and notified HSA staff, who directed the foster parent to

20  prepare an incident report.  (*Id*. at 10–11.)  Plaintiffs allege HSA staff then placed the children

21  with a different foster parent, and, on March 21, 2019, this new foster parent took At.B to urgent

22  care where he received antibiotics for "sores" on his body without Plaintiffs' knowledge or

23  consent.  (*Id*. at 11.)  At an April 3, 2019 hearing, Plaintiffs allege they raised their concerns

24  regarding not being able to attend their children's medical appointments with the juvenile court,

25  who ordered HSA to notify Plaintiffs of any future medical appointments.  (*Id*. at 12.)  However,

26  Plaintiffs allege their children continued to attend medical appoints and receive various

27  vaccinations without their knowledge or consent.  (*Id*. at 12–13.)

28  / / /

2

On January 18, 2021, Plaintiffs, proceeding pro se, initiated this action against the County, HSA, and seven HSA employees, including Gonzales.  (ECF No. 1.)  However, by April 11, 2022, Plaintiffs had not yet served any Defendants named in the action.  (ECF No. 10.)  The Court then ordered Plaintiffs to show cause as to why this action should not be dismissed for failure to prosecute.  (*Id*.)  On May 13, 2022, Defendants filed a motion to dismiss for insufficient service of process.  (ECF No. 13.)  The County and HSA also moved to dismiss for failure to state a claim.  (ECF No. 17.)  This Court granted both motions with leave to amend.  (ECF No. 25.)  On December 30, 2022, Plaintiffs filed their First Amended Complaint, adding four additional Defendants to this action, and Defendants filed four separate motions to dismiss.  (ECF Nos. 26, 31, 47, 53, 54.)  On February 22, 2023, attorneys Shawn A. McMillan and Samuel H. Park took over as counsel for Plaintiffs.  (ECF Nos. 58–61.)

On March 1, 2023, counsel for Defendants and Plaintiffs filed a stipulation with the Court (the "Stipulation Agreement and Order") in which Plaintiffs expressly agreed to "dismiss without prejudice those defendants as to whom his current investigations reveal no basis for a claim, which will include … Yeni Gonzalez …."  (ECF No. 62.)  In exchange, Defendants agreed to withdraw their four pending motions to dismiss and allow Plaintiffs thirty days to file a second amended complaint.  (*Id*.)  On March 29, 2023, Plaintiffs filed the operative Second Amended Complaint ("SAC"), asserting the following violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983 ("§ 1983"): (1) First Amendment interference with familial relations against four social workers, including Gonzales, and ten Doe Defendants; (2) First Amendment retaliation claims against the same Defendants; and (3) *Monell* liability against the County.  (ECF No. 65.)  On April 8, 2023, Defendants filed the instant motion to dismiss.  (ECF No. 70.)

## II.   STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the

1  defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

2  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified

3  notice pleading standard relies on liberal discovery rules and summary judgment motions to

4  define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema*

5  *N.A*., 534 U.S. 506, 512 (2002).

6       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

7  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

8  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

9  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

10  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

11  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

12       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

13  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

14  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

15  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

16  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

17  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

18  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

19  statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

20  are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

21  F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

22  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

23  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

24  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

25       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

26  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

27  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

28  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III.   ANALYSIS

In moving to dismiss, Defendants argue Gonzales should be dismissed from this action because the Stipulation Agreement and Order dismissed Gonzales from this action.  (ECF No. 70 at 14–15.)  Defendants further argue the County should be dismissed from this action because Plaintiffs fail to sufficiently allege *Monell* liability.  (*Id*. at 18–23.)  The Court will address each of Defendants' arguments in turn.

5

1        A.      Gonzales

2        Defendants argue this Court should dismiss Gonzales from this action because Plaintiffs

3    agreed to dismiss Gonzales in the Stipulation Agreement and Order.  (ECF No. 70 at 14.)  In the

4    Stipulation Agreement and Order, Plaintiffs agreed to "dismiss without prejudice those

5    defendants as to whom his current investigations reveal no basis for a claim, which will include

6    … Yeni Gonzalez."  (ECF No. 64 at 3.)  However, on March 29, 2023, Plaintiffs filed their SAC

7    and named Gonzales as a Defendant, despite the terms of the Stipulation Agreement and Order.

8    (*See* ECF No. 65.)

9        "Courts [] enforce stipulations as a general rule, absent circumstance tending to negate a

10   finding of informed and voluntary assent of a party to the agreement."  *United States v.*

11   *McGregor*, 529 F.2d 928, 931 (9th Cir. 1976).  Plaintiffs allege they never intended to dismiss

12   Gonzalez completely from this action through the Stipulation Agreement and Order.  (ECF No.

13   72 at 14.)  Rather, Plaintiffs allege "it was Plaintiff's counsel's understanding that he was

14   agreeing to dismiss, without prejudice, the defendants listed in the filed stipulation in relation to

15   the unwarranted seizure claims."  (*Id.*)

16       Plaintiffs' contentions appear disingenuous based upon the plain language of the

17   Stipulation Agreement and Order.  Specifically, in the seventh paragraph of the Stipulation

18   Agreement and Order, Plaintiffs' counsel agrees to dismiss all claims "arising from the seizure of

19   the children" because "it does not look like there is an unwarranted seizure claim."  (ECF No. 64

20   at 2.)  In the next paragraph, Plaintiffs' counsel agrees to "dismiss without prejudice those

21   defendants to whom his current investigations reveal no basis for a claim, which will include …

22   Yoni Gonzales."  (*Id*. at 3.)

23       Given the structure of these two paragraphs, the Court finds Plaintiffs made two distinct

24   agreements.  In the first agreement, Plaintiffs agreed to dismiss all unwarranted seizure claims.

25   (*See* ECF No. 64 at 2.)  In the second agreement, Plaintiffs agreed to completely dismiss several

26   defendants from this action, including Gonzales, because there was no basis for a claim against

27   these defendants.  Thus, the Court finds the plain language of the Stipulation Agreement and

28   Order suggests it was the understanding of both Plaintiffs and Defendants that Gonzales would be

1  completely dismissed from this action. The Court also finds the language in the Stipulation

2  Agreement and Order makes clear that Plaintiffs' counsel made an informed decision before

3  dismissing Gonzales because they had time prior to entering into the Stipulation Agreement and

4  Order to investigate whether there was a viable claim against Gonzales.

5       Moreover, Defendants argue they would not have given Plaintiffs the opportunity to file a

6  second amended complaint had Plaintiffs not agreed to dismiss Gonzales from this action through

7  the Stipulation Agreement and Order.  (ECF No. 70 at 14) ("Defendants entered into the

8  Stipulation in good faith based on Mr. McMillan's representations he would dismiss the

9  individual defendants he listed in the Stipulation he prepared, including Gonzales.").

10      Therefore, the Court finds Plaintiffs, through the Stipulation Agreement and Order, agreed

11  to dismiss Gonzales completely from this action.  Accordingly, the Court GRANTS Defendants'

12  motion to dismiss all claims against Gonzales included in the SAC.

13      In their moving papers, Defendants request the Court dismiss all claims against Gonzales

14  with prejudice, arguing "Plaintiffs are acting in bad faith by continuing to name Ms. Gonzales and

15  refusing to dismiss her, in contravention of the Stipulation and Order."  (ECF No. 70 at 23.)

16  Plaintiffs allege they did not discover there were possible claims against Gonzales until after they

17  entered the Stipulation Agreement and Order and Plaintiffs' attorneys began drafting and

18  investigating claims for the SAC.  (ECF No. 72 at 14.)  If that is the case and Plaintiffs still wish

19  to rename Gonzales as a Defendant in this action, then Plaintiffs will need to file a properly

20  noticed motion to amend, articulating why it would be appropriate to rename Gonzales as a

21  Defendant in this action under Rule 15.  Thus, the Court DISMISSES all claims against Gonzales

22  in the SAC without prejudice.

23              B.    Monell Liability as to the County

24      In the SAC, Plaintiffs allege the County is liable under *Monell* because it "had a policy,

25  practice, or custom of conducting … investigatory bodily examination of detained children

26  outside the presence of their parent and without their parents' consent or an authorized order."

27  (ECF No. 65 at 7.)  A municipality may be liable under *Monell* for adopting a policy or custom

28  that inflicts injury, if a plaintiff can demonstrate: (1) the plaintiff possessed a constitutional right

of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation.  *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–91 (1989)).  Defendants argue Plaintiffs have not alleged the County had a policy of conducting unconstitutional medical examination on children because "Plaintiffs have failed to allege (i) a widespread custom or practice, (ii) how a failure to train caused them harm, or (iii) that any final policymaker ratified any actions."  (ECF No. 70 at 20–21.)

*i.   Custom, Policy, or Practice*

Defendants first argue "Plaintiffs' vague assertions of municipal policies, customs, and practices are insufficient to state a *Monell* claim."  (ECF No. 78 at 7.)  In opposition, Plaintiffs argue the SAC sufficiently alleges the "County's policy of conducing highly intrusive and traumatic physical and forensic medical exams upon children it takes into custody."  (ECF No. 72 at 18.)

"Absent a formal government policy, [a plaintiff] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity ... so persistent and widespread that it constitutes a permanent and well settled ... policy."  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks and citations omitted).  Thus, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out a policy."  *Id.*; *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016) (A plaintiff may not merely "identify a custom or policy, attributable to the municipality, that caused his injury.  [He] must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [others].") (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).

In the instant case, Plaintiffs allege the "County of San Joaquin's non-consensual unwarranted investigatory medical examinations and treatment of the Children were not an isolated incident specific to Plaintiffs' circumstances."  (ECF No. 65 at 22.)  "On the contrary,

such warrantless non-consensual medical examinations and procedures are routine, regular and recurring events….” (*Id.*)  However, Plaintiffs allegations amount to nothing more than vague and conclusory descriptions of a pattern, custom, or policy enacted by the County.  In the SAC, Plaintiffs do not identify any other specific instances of the County conducting unauthorized medical examinations on children.  Rather, Plaintiffs allegations against the County only relate to the physical and medical examinations performed on Plaintiffs’ children.  (*See* ECF No. 65 at 7– 9) (“Neither Piva nor Billings provided notice to Plaintiffs of their decision to transport the Children to San Joaquin General Hospital and have them subjected to a massively invasive and traumatic forensic medical examination.”).

Plaintiffs contend these allegations regarding their own children are sufficient to plead *Monell* liability and argue “District Courts throughout California have considered similar allegations and found them sufficient at the pleading stage.”  (ECF No. 72 at 19) (citing cases).  However, none of the cases cited by Plaintiffs were decided after the Ninth Circuit issued its ruling in *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021), where the Ninth Circuit reaffirmed that “one instance of County employees violating the constitutional rights of parents and children is insufficient to demonstrate a custom supporting *Monell* liability.”  933 F.3d at 1154.

Thus, the Court finds Plaintiff’s allegations regarding the County’s treatment of their children are insufficient to establish *Monell* liability based upon a custom, policy, or practice of the County.

### ii.  Failure to Train or Supervise

Plaintiffs also allege the County is liable under *Monell* because “the County deliberately refrained from providing its social workers with training sufficient to inform them of the constitutional rights of parents with whom the workers are likely to come in to contact.”  (ECF No. 72 at 22.)  A failure to train or supervise can also amount to a “policy or custom” sufficient to impose liability under § 1983 “where a municipality’s failure to train its employees in a relevant respect evidences a ‘deliberate indifference’ to the rights of its inhabitants.”  *City of Canton*, 489 U.S. at 389; *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (“In limited circumstances, a local

1   government's decision not to train certain employees about their legal duty to avoid violating

2   citizens' rights may rise to the level of an official government policy for purposes of § 1983.")

3          Defendants argue Plaintiffs only identify incidents involving their children which resulted

4   from the County's failure to train its social workers, and this incident alone is insufficient to

5   support a conclusion that the County had a constitutionally inadequate training program in place

6   at the time of the incident.  (ECF No. 78 at 9–10.)  The Court agrees with Defendants.

7          "A pattern of similar constitutional violations by untrained employees is 'ordinarily

8   necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick*, 563

9   U.S. at 62 (citation omitted).  However, "in a narrow range of circumstances," a pattern of similar

10  constitutional violations may not be required to show deliberate indifference where violations of

11  constitutional rights are "patently obvious" or the "highly predictable consequence" of a failure to

12  train.  *Id.* at 63 (citations omitted).

13         In the instant case, Plaintiffs summarily allege "Defendant County of San Joaquin

14  knowingly and with deliberate indifference failed to train its HSA employees and/or agents on the

15  constitutional rights of a parent and child…."  (ECF No. 65 at 22.)  Plaintiffs further allege

16  "[w]ithout adequate training, the individual Defendants, and each of them, were unfamiliar with

17  and oblivious to Plaintiffs' constitutional rights, when they subjected the Children to investigatory

18  medical examinations and/or procedures—without parental consent, court order, and/or

19  exigency."  (*Id.*)

20         Again, Plaintiffs base their failure to train or supervise claim on an isolated incident

21  involving their children.  However, [t]he isolated incidents of criminal wrongdoing by one

22  [defendant] do not suffice to put the County ... on 'notice that a course of training is deficient in a

23  particular respect,' nor that the absence of such a course 'will cause violations of constitutional

24  rights.'"  *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick*, 563 U.S.

25  at 62).  Thus, the Court finds Plaintiffs have not adequately plead a claim for failure to train based

26  upon a pattern of similar constitutional violations by untrained employees.  Nor do Plaintiffs

27  sufficiently allege any facts suggesting this claim falls within "the narrow range of circumstances

28  [in which] a pattern of similar violations might not be necessary to show deliberate indifference."

1   *Connick*, 563 U.S. at 63.  Accordingly, the Court finds Plaintiffs have not sufficiently alleged

2   *Monell* liability based upon a failure to train theory.

3                                           *iii.   Ratification*

4           Finally, Plaintiffs allege the County is liable under *Monell* because "Defendant County of

5   San Joaquin ratified and/or approved of the unwarranted investigatory medical examinations and

6   medical procedures performed on the Children."  (ECF No. 65 at 22.)  "[A] municipality can be

7   liable for an isolated constitutional violation when the person causing the violation has 'final

8   policymaking authority.'"  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (quoting *City of*

9   *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).  A policymaker's knowledge of an

10  unconstitutional act does not, by itself constitute ratification.  *Id*. at 1239. A plaintiff must show

11  the policymaker approved of the subordinate's acts, but mere refusal to overrule a subordinate's

12  completed acts does not constitute approval.  *Id*.  It is the policymaker's authority to make final

13  decisions on behalf of a local government that makes his actions capable of imposing liability on

14  it.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

15          Defendants argue Plaintiffs' "allegation fails to allege any final policymaker ratified any

16  of the social workers' action" nor does the SAC "even allege any County final policymakers

17  knew of the alleged unconstitutional conduct."  (ECF No. 70 at 23.)  The Court agrees with

18  Defendants.  Plaintiffs' opposition summarily states, "Here, all the conduct was undertaken with

19  supervisor participation or approval."  (ECF No. 72 at 21.)  However, nowhere in the SAC do

20  Plaintiffs identify an authorized County policymaker who approved of the alleged

21  unconstitutional medical examinations on Plaintiffs' children or even knew of the alleged

22  constitutional violations.  Thus, the Court finds Plaintiffs have not sufficiently alleged *Monell*

23  liability based upon a ratification theory.

24          Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' *Monell* claim

25  against the County with leave to amend.

26  ///

27  ///

28  ///

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss. (ECF No. 70) as follows:

    1.  The Court GRANTS Defendants' motion to dismiss all claims against Gonzales included in the SAC without prejudice.  As previously stated, should Plaintiffs seek to re-name Gonzales as a Defendant in this action, then they must file a properly noticed motion to amend.

    2.  The Court GRANTS Defendants' motion to dismiss Plaintiffs' *Monell* claim against the County with leave to amend.  Plaintiffs may file an amended complaint no later than thirty (30) days from the electronic filing date of the Court's order resolving the last of the currently pending motions to dismiss and strike in this action.  Defendants will then have twenty-one (21) days to file any responsive pleadings.  Should Plaintiffs opt to not amend their Complaint with regards to the County's liability under *Monell*, then the Court will dismiss the County from this action and this case will proceed on any remaining claims in this action.

IT IS SO ORDERED.

Date:  February 2, 2024

Troy L. Nunley
United States District Judge

12